IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BILL CONWAY,
          Petitioner,

vs.

                                        Civil No. 16-cv-00338-DRH

KAREN JAIMET, WARDEN,

          Respondent.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

On March 28, 2016, Bill Conway (Petitioner) filed a petition under 28 U.S.C. § 2254 in this Court, conceding the filing was untimely. (Doc. 1). The Court dismissed it without prejudice for failure to name the proper respondent and appointed the Federal Public Defender to represent Petitioner. (Doc. 4). Petitioner timely filed an Amended Petition, asserting (1) his trial counsel was ineffective for failing to investigate his mental condition and (2) his guilty plea was not knowing or voluntary. (Doc. 16). Respondent filed a Motion to Dismiss Petitioner's § 2254 as untimely, (Doc. 24), and Petitioner responded, arguing he is entitled to equitable tolling, (Doc. 25). For the following reasons, Respondent's Motion to Dismiss is granted.

## Relevant Facts and Procedural History

In July 2004, Petitioner was indicted in the Circuit Court of Cook County, Illinois on two counts of solicitation of murder, two counts of solicitation of murder for hire, and one count of attempted first-degree murder. In November

2004, a second indictment charged Petitioner with three counts of solicitation of murder, three counts of solicitation of murder for hire, and three counts of attempted first-degree murder. (Doc. 16, p. 1).

After holding two competency hearings, the court found Petitioner fit to stand trial. On May 8, 2007, Petitioner entered into a negotiated plea of guilty and was convicted of three counts of solicitation of murder for hire and one count of attempted first-degree murder. The remaining counts were dismissed. Petitioner received twenty-year sentences for each solicitation count, to run concurrently, and a ten-year sentence for the attempted murder count, to run consecutive to the solicitation sentences. (Doc. 16, p. 2).

Petitioner did not file a direct appeal, but filed a post-conviction petition under Illinois' Post Conviction Hearing Act, 725 ILCS 5/122-2 (West 2008), on May 21, 2009. The Illinois State Court dismissed the petition, and Petitioner appealed to the Illinois Appellate Court, which affirmed the dismissal. Petitioner did not appeal to the Supreme Court of Illinois. Petitioner also filed unsuccessful post-conviction motions in 2014, including a Petition for Relief from a Void Judgment and a House Bill Sentence Reduction Motion. (Doc. 16, pp. 2-5). Petitioner filed his § 2254 Petition *pro se* in March 2016, (Doc. 1), and filed the instant Amended Petition in July 2017, (Doc. 16).

## **Timeliness of Petition**

28 U.S.C. § 2254 permits persons in custody pursuant to a state court judgment to bring a petition for a writ of habeas corpus "on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must file a § 2254 within one year from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244.

Respondent asserts that (A) is the only applicable subsection to Petitioner's claim. Petitioner entered his guilty plea and was sentenced on May 8, 2007, and had thirty days to file a direct appeal. IL. SUP. CT. R. 604(d). His conviction became final on June 7, 2007, which is the last date he could have appealed his sentence or moved to withdraw his guilty plea. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (A judgment becomes final for purposes of § 2244 at the expiration of the time for seeking direct review in state court.). Therefore, the limitations period for filing a § 2254 Petition expired one year later on June 7, 2008.

Petitioner suggests, on the other hand, that (D) may also be applicable, (Doc. 16, p. 30), but admits the argument "is not central to or necessary for Petitioner's assertion of cause or equitable tolling," He admits that the petition was late even if (D) applied. (Doc. 25, p. 4). Thus, the Court will adopt the limitations period Respondent sets forth.

Petitioner ultimately concedes his § 2254 is untimely, (Doc. 16, pp. 14, 30), but asserts he is entitled to equitable tolling because his mental limitations prevented him from understanding and acting upon his legal rights.

## **Petitioner's Mental Health Records**

Petitioner attests he is illiterate, he could not afford to pay anyone to assist in filing his claim, the prison library was not helpful, and his medications for mental and emotional problems hindered his ability to timely file. (Doc. 16, Ex. 6). Petitioner's medical records include diagnoses of depressive disorder, schizoaffective disorder,[1] adjustment disorder,[2] and borderline intellectual functioning.[3]

### *Court-Ordered Evaluations*

---

[1] The National Institute of Mental Health defined schizoaffective disorder as "[a] mental health condition that causes both a loss of contact with reality (psychosis) and mood problems (depression or mania)." *Glossary*, NATIONAL INSTITUTE OF HEALTH, https://www.nimh.nih.gov/health/topics/schizophrenia/raise/glossary.shtml (last visited Dec. 6, 2017).

[2] "Adjustment disorder is a group of symptoms, such as stress, feeling sad or hopeless, and physical symptoms that can occur after you go through a stressful life event." *Medical Encyclopedia*, MEDLINEPLUS, https://medlineplus.gov/ency/article/000932.htm (last visited Dec. 6, 2017).

[3] Borderline intellectual functioning is defined as an IQ between 71 and 84. For reference, mental retardation is defined as an IQ of 70 or below. J.E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE, (Matthew Bender 2017).

Several psychologists evaluated Petitioner to opine whether he was fit to stand trial. In December 2004, Dr. Erick Neu conducted an assessment of Petitioner, pursuant to a court order. He stated Petitioner appeared to be malingering both psychotic symptoms and cognitive impairment. According to Dr. Neu, Petitioner was likely to behave in an oppositional manner towards defense counsel due to maladaptive personality traits and not a mental illness or defect, but was capable of collaborating with his counsel. Dr. Neu was unable to perform a complete IQ test because Petitioner indicated trouble seeing without his glasses. Dr. Neu used the verbal subtests of the Wechsler Adult Intelligence Scale – III and Petitioner scored an IQ of 59, which falls in the Extremely Low Range. However, the doctor determine this was likely a "significant underestimate" of Petitioner's IQ due to suspected malingering and verbal subtests being most difficult for Petitioner. Dr. Neu determined Petitioner was fit to stand trial and legally sane. (Doc. Ex. pp. 1-2).

In June and January of 2005, Dr. Roni Seltzberg also evaluated Petitioner pursuant to a court order. Dr. Seltzberg opined on both occasions that Petitioner was fit to stand trial and was legally sane. *Id.* at pp. 5-6.

Dr. Neu evaluated Petitioner again in March 2006. He noted Petitioner was malingering, but nonetheless had legitimate cognitive problems. *Id.* at pp. 3-4.

### *Defense Expert Testimony*

Dr. Michael Fields, a licensed clinical psychologist, testified at Petitioner's competency hearing in January 2006. Dr. Fields evaluated Petitioner on multiple

occasions and opined Petitioner was not fit for trial. Dr. Fields explained that Petitioner had significant problems processing verbal information effectively and performed very poorly on the MacArthur Test, which assesses a person's understanding of what happens in a courtroom setting. Dr. Fields stated Petitioner had a "significant sub-average intellectual competence" and an IQ of 63. He diagnosed Petitioner with major depressive disorder, recurrent; cocaine dependence; alcohol dependence; rule-out schizoaffective disorder, depressive type; mild mental retardation; and personality disorder not otherwise specified. (Doc. 17, pp. 3-41).

### *Illinois Department of Corrections Mental Health Records*

During the one-year limitations period, Petitioner received mental health services through the Illinois Department of Corrections. On May 15, 2007, he underwent a mental health evaluation upon intake. He was cooperative, alert and oriented, and demonstrated an appropriate mood and affect. He was diagnosed with depressive disorder and referred to a psychiatrist. (Doc. 19, p. 110).

Petitioner thereafter attended regular monthly sessions with a psychiatrist. He appeared alert and oriented at each session and demonstrated logical and coherent thoughts, along with fair insight and judgment. He repeatedly denied any side effects from his medications. *Id.* at pp. 80, 82, 83, 85, 86, 88, 91, 94, 96, 99, 101, 103, 104, 106, 107.

In October 2007, Petitioner stated the devil had been talking to him for twenty-two years. His psychiatrist diagnosed him with schizoaffective disorder,

depressed type, and started him on Risperdal[4] and Celexa.[5]  *Id.* at 107.  Later that month, Petitioner reported feeling better and stated the devil did not talk to him anymore.  His medications were reportedly helping.  *Id.* at 106.

In November and December of 2007, Petitioner reported he heard voices once or twice per week.  His psychiatrist diagnosed him with adjustment disorder with depressed mood and borderline intellectual functioning.  *Id.* at pp. 103-05.

In January 2007, Petitioner reported he was nervous and paranoid.  He was still hearing voices.  Petitioner's psychiatrist discontinued the Celexa and started Petitioner on Remeron.[6]  *Id.* at 101.

In February 2008, Petitioner reported auditory hallucinations of a voice telling him to kill himself.  He last attempted suicide five months before.  He presented no signs of delusions or mania.  *Id.* at 100.

In March 2008, Petitioner stated he was doing okay but sometimes heard voices.  *Id.* at p. 97.

Throughout the next nine months, Petitioner demonstrated logical, coherent, and goal-directed thought processes.  He denied any auditory or visual hallucinations or delusions.  His insight and judgment were fair, and he was alert and oriented.  He continued to take Risperdal and Remeron.  *Id.* at pp. 79, 80, 82, 84, 85, 86, 88, 91, 94.

---

[4] Risperdal is an antipsychotic medicine used to treat schizophrenia. DRUGS.COM, https://www.drugs.com/risperdal.html (last visited Dec. 6, 2017).
[5] Celexa is an antidepressant used to treat depression. DRUGS.COM, https://www.drugs.com/search.php?searchterm=celexa (last visited Dec. 6, 2017).
[6] Remeron is an antidepressant used to treat major depressive disorder. DRUGS.COM, https://www.drugs.com/search.php?searchterm=remeron (last visited Dec. 6, 2017).

## Analysis

"Equitable tolling is an extraordinary remedy" that courts "rarely" grant. *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted).

The Seventh Circuit has held that mental incompetence may constitute an extraordinary circumstance to justify equitable tolling. *Davis v. Humphreys*, 747 F.3d 497, 499 (7th Cir. 2014). However, a person is not entitled to tolling just because his shortcomings played a causal role in the delayed filing. *Id.* A low IQ, illiteracy, a lack of educability, and the inability to cope with legal subjects does not *per se* entitle someone to tolling. *Id.* at 500. Rather, the person's mental condition must "*in fact*" prevent him "from understanding his legal rights and acting upon them." *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016).

Petitioner, here, has not shown he was incapable of understanding or acting upon his legal rights. To the contrary, the facts weigh strongly in favor of the opposite conclusion. Petitioner filed a post-conviction petition, a request for appointment of counsel, and an appeal of the petition's denial in 2009. He also filed a Petition for Relief from a Void Judgment, a House Bill Sentence Reduction Motion, a Motion to Proceed in Forma Pauperis, and a Motion for Appointment of

Counsel, in 2014. Finally, Petitioner filed a § 2254 petition *pro se* in March 2016. (Doc. 16, pp. 2-5).

Despite initiating all of these proceedings, Petitioner posits he was unable to pursue his § 2254 during the limitations period. Petitioner maintains he was mentally incompetent since as early as 2007 and does not assert his condition was worse during the limitations period. He states he cannot recall how he was able to pursue the aforementioned legal filings, but insists he was only able to do so with the assistance of other inmates. (Doc. 16, p. 18). However, the inquiry is not whether Petitioner was competent enough to prepare the legal documents himself. As the Seventh Circuit explained, "Many persons of normal intellect are unable to cope with the legal system." *Davis v. Humphreys*, 747 F.3d 497, 499 (7th Cir. 2014). Instead, this Court examines whether Petitioner was capable of understanding and acting upon his legal rights. Clearly he was; Petitioner acknowledges he sought out assistance from other inmates and visited the law library in pursuit of his § 2254.

In addition, Petitioner's mental health records from IDOC do not indicate Petitioner's conditions rose to the level of extraordinary circumstances. Throughout the majority of the limitations period, Petitioner demonstrated logical and coherent thought processes, he was alert and oriented, and his psychiatrist opined his judgment and insight were fair.

In sum, Petitioner was cognizant of his right to file the instant motion and even took steps toward doing so. He cannot show his mental conditions in fact

caused his untimely filing and he therefore fails to show extraordinary circumstances impeded his ability to timely file his claim.

Petitioner also fails to show he diligently pursued his claim throughout the required period. Petitioner bears the burden of establishing he was "reasonably diligent in pursuing his rights *throughout the limitations period and until he finally filed his untimely habeas petition*." *Id.* at 870 (emphasis added). In the case at bar, this period encompasses eight years. Petitioner makes a vague reference to visiting the law library and asking other inmates for assistance, which is insufficient to show diligence for such a lengthy period.

Petitioner has not shown he is entitled to equitable tolling. His mental incompetency does not constitute an extraordinary circumstance; he was able to understand and act upon his legal rights. Moreover, he does not set forth evidence he was reasonably diligent in pursuing his claim throughout the entirety of the limitations period and up until he filed his § 2254.

Lastly, the Court considered whether Petitioner meets the fundamental miscarriage of justice standard of *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). *McQuiggin* holds that "a credible showing of actual innocence" may overcome the bar of the one-year statute of limitations for filing a habeas petition under 28 U.S.C. § 2254. *Id.* at 1931. The Supreme Court reaffirmed the *Schlup* standard for a credible showing of actual innocence, cautioning that "tenable actual-innocence gateway pleas are rare" and describing the *Schlup* standard as "demanding" and "seldom met." *Id.* at 1928.

A credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The *Schlup* standard permits habeas review of defaulted claims only in the "extraordinary case" where the petitioner has demonstrated that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). Here, petitioner does not assert his innocence, present any new evidence, or otherwise make an argument under *McQuiggin*. As such, he cannot meet *McQuiggin's* fundamental miscarriage of justice standard.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). Both components must be established for a COA to issue.

Here, it is clear that Petitioner's petition is time-barred and he has not advanced a credible claim of actual innocence within the meaning of *McQuiggin* and *Schlup*. No reasonable jurist would find the issue debatable. Accordingly, the Court denies a certificate of appealability.

### Conclusion

Respondent's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 24) is **GRANTED**.

Bill Conway's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 16) is **DISMISSED WITH PREJUDICE**.

The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

Judge Herndon
2017.12.08
07:37:27 -06'00'

**United States District Judge**

## Notice

If petitioner wishes to appeal the denial of his petition, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). Petitioner is further advised that a motion to alter or amend the judgment filed pursuant to Fed. R. Civ. P. 59(e) must be filed no later than twenty-eight days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the thirty-day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.